ADOLPH PETERS

*v.*

EMMA BALKE.

*Opinion filed December 22, 1897.*

1. FORCIBLE DETAINER—*action of, could not be brought against grantor prior to amendment of 1881.* An action of forcible entry and detainer could not be brought against a grantor refusing to surrender possession, prior to the addition, in 1881, of clause 6 to section 2 of the Forcible Entry and Detainer act, (Laws of 1881, p. 97,) and deeds were formerly inadmissible except to show the extent of possession or the animus of the entry.

2. SAME—*effect of amendment of section 2 of the Forcible Detainer act.* Clause 6 of section 2 of the Forcibly Entry and Detainer act contemplates a case where the grantor, having conveyed by deed, refuses to surrender possession to the grantee; and in an action thereunder the grantor's deed is admissible to show there was a grantor who conveyed and a grantee to whom the conveyance was made.

3. SAME—*action cannot be maintained under clause 6 without the introduction of deed in evidence.* An action of forcible entry and detainer by a grantee against a grantor withholding possession, cannot be maintained without the introduction in evidence, at the trial, of the grantee's deed, in order to show not only the extent of his possession, but his right to possession, even though questions of title cannot be tried in such action.

4. SAME—*possession of tenant is a sufficient possession under clause 6.* The possession of a tenant at the time when the landlord executed a trust deed for the rented premises is a sufficient possession by the landlord to constitute him a "grantor in possession," under clause 6 of section 2 of the Forcible Entry and Detainer act.

5. SAME—*action under clause 6 may be brought against tenant in possession under grantor.* An action of forcible entry and detainer may be brought, under clause 6 of section 2 of the Forcible Entry and Detainer act, against one in possession under the grantor as a tenant, who refuses to surrender possession after demand by the grantee entitled thereto.

6. DEEDS—*construction of word "unmarried," as used in trust deed.* The word "unmarried," used by a grantor in making disposition of property in case he "should die unmarried to" a certain person, will be construed as meaning "not being the husband of such person at his death," and not as "never having been married" to her, where it appears that at the time of the deed the marriage was contemplated and afterward occurred, but that the grantor survived the wife and married a second time.

7. LANDLORD AND TENANT—*life tenant cannot make lease for longer period than his own term.* A life tenant cannot make a lease for a longer period than his own term unless joined by the remainderman, and his lessee, upon the death of the life tenant, becomes a tenant by sufferance or at will.

8. SAME—*tenancy by sufferance or at will is terminated by demand for possession.* A tenancy by sufferance or at will is terminated by a demand for possession without notice to quit.

9. EVIDENCE—*life tenant presumed not to have made lease exceeding his own term.* It will be presumed, in the absence of evidence to the contrary, in an action of forcible entry and detainer against the lessee of a life tenant, that the life tenant, in executing the lease, did not make it for a longer period than his own term.

*Peters* v. *Balke*, 68 Ill. App. 587, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. C. G. NEELY, Judge, presiding.

This is an appeal from a judgment of the Appellate Court in favor of the appellee, affirming a judgment of the circuit court of Cook county also in favor of the appellee, rendered in an action of forcible entry and detainer, commenced before a justice of the peace and tried in the circuit court on appeal from the judgment in the justice court, which was against the appellant. The trial in the circuit court was before a jury. No evidence whatever was introduced upon said trial by the present appellant, the defendant below. The only proof introduced was the testimony of one witness, Henry A. Balke, the husband of appellee, and certain documentary evidence, consisting of a written notice or demand for the possession of the premises involved, and of two deeds hereinafter mentioned, one dated December 20, 1889, executed by Edward Muller to Charles S. Gloeckler, trustee, and the other dated May 20, 1895, executed by said Gloeckler, trustee, to the appellee, conveying the premises described in the first deed. The defendant below asked a number of instructions, among which was an instruction

to the jury to find the defendant not guilty, all of which instructions were refused by the court. The court thereupon instructed the jury, that, under the evidence in the case, their verdict must be for the plaintiff. The jury thereupon rendered a verdict, finding the defendant guilty of unlawfully withholding the possession of the premises described in the complaint, and that the plaintiff was entitled to the possession thereof.

The complaint, as filed before the justice on July 26, 1895, alleges that appellee is entitled to the possession of the lower flat of the front house on premises No. 63 Cleveland avenue, Chicago, and that Adolph Peters, the appellant here, and his wife, unlawfully withhold possession thereof from the appellee. The lot, upon which said house stands, is described as lot 8 in the subdivision by George Bickerdike of the east one-half of lot 30 and the north one-half of lot 31 in Butterfield's addition to Chicago. The lot was improved with a two-story building in front, and a cottage in the rear. The house or building in front seems to have consisted of the two flats, spoken of in the testimony as the top flat of the front house and the lower flat of the front house.

The written notice above referred to was a written demand for the immediate possession of the lower flat occupied by appellant, Peters, and was served on Peters on July 22, 1895. Peters stated, after the service of the notice upon him, that he would not move. On December 20, 1889, Edward Muller was the owner in fee of said lot, and lived in the upper flat of the front house with the appellee and her husband, the appellee being his granddaughter, and the said Edward Muller not then being married, and having no family. On that day Edward Muller executed the deed above mentioned to Charles S. Gloeckler, trustee, conveying said lot with the house and cottage thereon to said trustee in trust: "(1) For the grantor for life; (2) after his death, if Magdalena Hubacher, whom he is about to marry, survives him as his

widow, said Magdalena to occupy rear house and draw rents from lower flat of front house; (3) during life of Magdalena, Emma Balke, daughter of C. J. H. Muller, to occupy top flat of front house, etc.; (4) after the death of said Edward Muller, if he should die unmarried to said Magdalena Hubacher, or after the death of said Magdalena, if she should survive said Edward as his widow, then said trustee Gloeckler shall convey said property by good and sufficient deed to Emma Balke, her heirs and assigns, in fee simple." The provisions of this deed are more fully set out in *Muller* v. *Balke*, 154 Ill. 110.

After the execution of the deed, dated December 20, 1889, and in that month, or in January, 1890, Edward Muller married Magdalena Hubacher. She lived a year or two after said marriage, and died. Edward Muller married again before his death. On May 12, 1895, Edward Muller died in the cottage on the rear of the lot where he and his second wife lived. After his death, and on May 20, 1895, the trustee, Gloeckler, executed a deed to appellee, Emma Balke, in pursuance of the terms of the trust deed, dated December 20, 1889.

The testimony shows, that the appellant, Peters, was living in, and had possession of, the lower flat, described in the demand notice, at the time the deed was made by Edward Muller to Gloeckler, the trustee; and that he had been occupying the same, as tenant of Edward Muller, for a considerable time theretofore.

HENRY M. STOLTENBERG, and SULLIVAN & McARDLE, for appellant:

Where the existence of a tenancy is once shown, in order to entitle a landlord or his immediate or remote grantee to recover possession in any form of action, it is absolutely essential to show that the tenancy was terminated before the suit was begun. *Donohue* v. *Bank Note Co.* 37 Ill. App. 552; *Dunne* v. *Trustees*, 39 Ill. 578; *Brownell* v. *Welch*, 91 id. 523.

When possession alone is relied upon for any legal purpose, an actual possession is contemplated. *Champaign* v. *McMurray*, 76 Ill. 363; *Insurance Co.* v. *Marseilles Manf. Co.* 1 Gilm. 236; *Lancey* v. *Brock*, 110 Ill. 614; *Webb* v. *Sturtevant*, 1 Scam. 181.

When a deed is admissible in evidence in a forcible entry and detainer suit at all, it is only for the purpose of establishing the extent of the party's claim, or the animus or intention with which a party entered. *Pearson* v. *Herr*, 53 Ill. 144; *Brooks* v. *Bruyn*, 18 id. 539; *Huftalin* v. *Misner*, 70 id. 205; *Slate* v. *Eisenmeyer*, 94 id. 96.

In an action of forcible detainer title is immaterial, except for the purpose of showing the extent of possession. Deeds under which the party claims may be read in evidence, not for the purpose of proving title to the land, but the boundaries or extent of possession. *Croff* v. *Ballinger*, 18 Ill. 200; *Davis* v. *Easley*, 13 id. 192; *Brooks* v. *Bruyn*, 18 id. 539. .

The right of possession, if any, depending upon title as claimed through deeds, a freehold is therefore in issue. *Sanford* v. *Kane*, 127 Ill. 595; *Brushy Mound* v. *McClintock*, 146 id. 643; *Ducker* v. *Wear & Co.* 145 id. 653.

The word "unmarried," as it is commonly and usually used, means "never having been married." (Century Dictionary; Encyclopedia Dictionary.) And in the interpretation and construction of instruments in writing by the courts, where this word appears, it is given the same meaning. *In re Thistlewaite's Trusts*, 24 L. J. Ch. 712; *Clark* v. *Colls*, 9 H. L. 601; *In re Saunders' Trust*, 3 Kay & J. 152; *Maberly* v. *Strode*, 3 Ves. Jr. 450; *Pratt* v. *Matthew*, 22 Beav. 328; *Mortens* v. *Walley*, 54 L. J. Ch. 159; *Hall* v. *Robertson*, 22 id. 1054; *Bell* v. *Phyn*, 7 Ves. Jr. 453.

LACKNER & BUTZ, for appellee:

The party entitled to possession may bring suit, not only against an obstreperous grantor, but also against any one who obtains possession through or under him

and refuses to yield it. *Douglas* v. *Hartzell*, 15 Ill. App. 251; *Kratz* v. *Buck*, 111 Ill. 40.

The remedy of forcible detainer given by statute in favor of a purchaser at a judicial sale, after the time of redemption has expired, is not restricted to the nominal party against whom judgment is obtained, but may be employed against any one who, before or after the time of redemption has expired, obtains possession from the defendant in the judgment. *Kratz* v. *Buck*, 111 Ill. 40.

The primary meaning of "unmarried" is "never having been married." But the word is one of flexible meaning, and slight circumstances, no doubt, will be sufficient to give it its other meaning of "not having a husband or wife at the time in question."

In the following cases the word "unmarried" has been held to mean "not having a husband or wife at the time in question:" *Clark* v. *Colls*, 9 H. L. 601; *Pratt* v. *Matthew*, 22 Beav. 328; *Mitchell* v. *Colls*, 29 L. J. Ch. 403; *Day* v. *Barnard*, 30 id. 220; 27 Am. & Eng. Ency. of Law, 697; *In re Saunders' Trust*, L. R. 1 Eq. 675.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The questions involved in this case are chiefly questions of law, arising out of the action of the circuit court in overruling the objections, made by the appellant in the trial below to the introduction of the deeds, described in the statement preceding this opinion, and in refusing the instructions asked by the appellant.

*First*—The chief objections, made to the deeds, were that their introduction raised a question of title, such as cannot be adjudicated in an action of forcible entry and detainer; and that Gloeckler, the trustee and grantor in the second deed, had no authority, under the trust deed, to convey the premises to the appellee, Emma Balke.

The present action of forcible entry and detainer was begun under clause 6 of section 2 of the Forcible Entry

and Detainer act, which is as follows: "When lands or tenements have been conveyed by any grantor in possession, or sold under the judgment or decree of any court in this State, or by virtue of any sale in any mortgage or deed of trust contained, and the grantor in possession, or party to such judgment or decree or to such mortgage or deed of trust, after the expiration of the time of redemption, when redemption is allowed by law, refuses or neglects to surrender possession thereof after demand in writing by the person entitled thereto, or his agent," the person entitled to such possession may be restored thereto. (1 Starr & Curtis' Stat. p. 1175). If there be eliminated from said sixth clause the portion thereof not here applicable, the part applicable to the case at bar is as follows: "When lands or tenements have been conveyed by any grantor in possession  *  *  *  and the grantor in possession  *  *  *  refuses or neglects to surrender possession thereof after demand in writing by the person entitled thereto or his agent."

It is evident, that the sixth clause contemplates a case where the grantor, having conveyed away land by deed, remains in possession, and refuses to surrender possession to his grantee in accordance with the terms of the deed. It follows, that the introduction of a deed is necessary, in connection with the fact of possession, to show that there was a grantor who conveyed, and a grantee to whom a conveyance was made. Before the addition of clause 6 to section 2 of said act, the remedy, in such a case as the case at bar, was by action of ejectment. Before the adoption of said clause, an action of forcible entry and detainer could not be brought under the state of facts contemplated by that clause; and deeds were inadmissible upon a trial of such action, except for the purpose of proving the extent of possession or the animus of the entry. In 1861, the legislature extended the benefits of the Forcible Detainer act to purchasers at judicial sales; in 1874, the benefits of the act were extended to

purchasers at sales under powers in mortgages or deeds
of trust; in 1881, the legislature further extended the
benefits of this remedy to the grantee of land as against
the grantor, who refuses to surrender possession. It is
plain, that no suit can be maintained, under the portion
of clause 6 now under consideration, without the intro-
duction upon the trial of a deed to the lands sought to
be recovered. Such deed must be introduced, not merely
for the purpose of showing the extent of the possession,
but for the purpose of showing the plaintiff's right to the
possession. In this action of forcible entry and detainer,
the question of title, as between the plaintiff and the de-
fendant or any one else, cannot be tried. As the right
to possession only is involved in this action, and as its
object is merely to secure possession of the premises in
controversy, a judgment therein is not a bar to an action
of ejectment between the same parties regarding the same
premises. Here the right of possession does not depend
upon the title, but upon the existence of the particular
facts specified in clause 6, as grounds for the action of
forcible entry and detainer. The title can no more be
inquired into for any purpose in this action now than it
could before the passage of clause 6. But while this is
so, plaintiff cannot recover under the statute unless he
offers in evidence a deed for the purpose of showing that
he is a grantee entitled to possession. Such has been
the ruling of this court in a number of cases. (*Kepley* v.
*Luke*, 106 Ill. 395; *Kratz* v. *Buck*, 111 id. 40).

The objection, that Gloeckler, the grantor in the deed
dated May 20, 1895, had no authority under the trust deed
to convey the premises to appellee, is based upon the
contention that Muller, before his death, had been mar-
ried to Magdalena Hubacher. The solution of this con-
tention depends upon the meaning to be given to the
word, "unmarried," as used in the following clause in
the fourth paragraph of the deed of trust, to-wit: "If he
should die unmarried to said Magdalena Hubacher." Ap-

pellant claims, that the word "unmarried" as here used, means "never having been married," while the appellee claims, that said word means "not being married at the time of his death." In other words, appellant claims that the trustee had no right to convey the property to the appellee, because. Edward Muller did not die never having been married to Magdalena Hubacher, while appellee claims that such trustee had a right to make such trust deed, because the said Edward Muller at the time of his death was not married to said Magdalena Hubacher, she having died before his death. There is conflict in the authorities as to the meaning of the word "unmarried." Undoubtedly, its original and usual meaning is "never having been married." "But the term is a word of flexible meaning, and slight circumstances, no doubt, will be sufficient to give the word its other meaning of not having a husband or wife at the time in question." (27 Am. & Eng. Ency. of Law, p. 697). In *Clarke* v. *Colls*, 9 H. L. 601, Lord Cranworth said, that the word "unmarried" "may, without any violence to language, mean either 'without ever having been married,' or 'not having a husband living at her death;'" and, in that case, it was held, that "unmarried" is a word of flexible meaning to be construed with reference to the plain intention of the instrument where it is used and that, as used in the settlement there, it meant, "being without a husband at the time of the death." The same meaning was given to the word in *In re Saunders' Trust*, L. R. 1 Eq. Cas. 675. (See also *Pratt* v. *Matthew*, 22 Beav. 328; *Mitchell* v. *Colls*, 29 L. J. Ch. 403; *Day* v. *Barnard*, 30 id. 220).

In the case at bar, an examination of the various provisions of the deed of trust, as set out in *Muller* v. *Balke*, 154 Ill. 110, will show that the intention of the grantor in the deed was to give to the words "if he should die unmarried to said Magdalena Hubacher," the following meaning: If he should die not being the husband of Magdalena Hubacher at the time of his death, or if he

should die not having Magdalena Hubacher as his wife at the time of his death. She having died before he did, it may be said that when he died he was unmarried to her. The deed shows upon its face, that it was made in contemplation of an immediate marriage to Magdalena Hubacher. In paragraph 2 the words are, "after his death if Magdalena Hubacher whom he is about to marry," etc. The evidence shows, that the contemplated marriage was consummated within a few weeks after the deed was executed. It seems improbable that the grantor would use language capable of the meaning that he should never be married to Magdalena Hubacher, when, at the very moment he used such language, he contemplated an immediate marriage with her. Inasmuch, therefore, as Edward Muller died without being the husband of Magdalena Hubacher at the time of his death, the trustee, Gloeckler, had the power under the trust deed, after his death, to convey the premises to Emma Balke. We are of the opinion, that there was no error in admitting the deeds in evidence, either upon the ground that their introduction raised a question of title, or upon the ground that the trustee in the trust deed was without authority to convey the premises to appellee.

*Second*—Appellant further contends that, by the use of the words "any grantor in possession," clause 6 contemplates a case where the grantor is in actual possession, that is to say, has an actual *pedis possessio;* that possession by a tenant is not such actual possession as is meant by clause 6; and that, inasmuch as the appellant, Peters, was in possession under Edward Muller before the deed of trust was made on December 20, 1889, and continued in such possession up to the time of the service of the written notice upon him on July 22, 1895, and as the appellee never was in possession at all, therefore the case at bar does not come within the meaning of clause 6 as above quoted. It has always been held by this court, that possession through a tenant is actual possession by the

landlord. (*Lancey* v. *Brock*, 110 Ill. 609; *Mallett* v. *Kaehler*, 141 id. 70). It has also been held by this court, that the party entitled to the possession may bring suit, not only against the grantor who refuses to deliver up the possession, but also against any one who obtains possession through or under the grantor and refuses to yield it. "The remedy of forcible detainer given by the statute in favor of a purchaser at a judicial sale, after the time of redemption has expired, is not restricted to the nominal party against whom the judgment is obtained, but may be employed against any one who, either before or after the time of redemption has expired, obtains possession from the defendant in the judgment or decree." (*Kratz* v. *Buck, supra; Jackson* v. *Warren*, 32 Ill. 331). In *Rice* v. *Brown*, 77 Ill. 549, where a sale was held to have been made by a trustee under and by virtue of the power in a trust deed, and where a party was in possession of the land under the maker of the trust deed, it was held that such party so in possession under the maker of the trust deed was to be considered as a party to the trust deed within the meaning of said clause 6, and that an action of forcible detainer would lie against such party by the purchaser at the trustee's sale, and that a demand upon such party is sufficient. We can see no difference in principle between the case of *Rice* v. *Brown, supra,* and the present case. Edward Muller was the grantor in the deed, dated December 20, 1889, and the trustee, Gloeckler, was the grantor in the deed dated May 20, 1895. The present appellant was in possession under the grantor, Edward Muller; and under the doctrine announced in *Rice* v. *Brown, supra,* there was here a grantor in possession within the meaning of said clause 6.

But the appellant further contends, that he was in possession of the premises under Edward Muller before the deed, dated December 20, 1889, was executed, and that, because of this fact, it was necessary that appellant's tenancy should be terminated. Appellant con-

tends, that there is no evidence in the record showing that his tenancy was ever terminated; and he asked for an instruction to the jury to that effect.

By the terms of the deed, executed by Edward Muller on December 20, 1889, he reserved to himself a life interest only in the premises. When, therefore, he died on May 12, 1895, his interest therein ended. The law is, that a tenant for life cannot make a lease for a longer period than his own term, unless the remainder-man joins; and that, when a person is in possession under a tenant for life, and the latter dies, such sub-tenant is a tenant by sufferance, or a tenant at will. (12 Am. & Eng. Ency. of Law, p. 669; *Wright* v. *Graves*, 80 Ala. 416; *Horsey* v. *Horsey*, 4 Harr. 517). While the evidence in this case shows that the appellant was a tenant under Edward Muller, it does not show upon what terms he was such tenant. The nature of the tenancy is not disclosed by the proof. As Edward Muller, the tenant for life, had no power to make a lease to continue longer than his own estate, it will be presumed, in the absence of any evidence to the contrary, that the lease, which he made to the appellant, was only such a lease as he was authorized to make. Consequently, at his death, appellant was merely a tenant by sufferance. He remained in possession for some ten weeks after the death of Edward Muller, and then written demand for immediate possession was made upon him by appellee. Under the circumstances this written demand was sufficient. Where there is a tenancy at will, or by sufferance, such a tenancy is terminated by a demand for possession without any notice to quit. (*Dunne* v. *Trustees of Schools*, 39 Ill. 578). It follows, that it was unnecessary for the appellee to do anything more in the way of terminating the tenancy of appellant than was done.

We find no error in the rulings of the court below; and, accordingly, the judgment of the Appellate Court, affirming the judgment of the circuit court, is affirmed.

*Judgment affirmed.*